

**FILED & ENTERED**

**JAN 27 2014**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** Williams  **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re: | CHAPTER 7 |
| Nicholas Stephen Kahrilas<br>Laura Rae Kahrilas | Case No.:  1:11-bk-13182-MT<br>Adv No:   1:11-ap-01409-MT |
| Debtor(s). | |
| Profit Sharing Plan by William L Francis and Mark A & Cathy A Daniel Declaration of Trust Etc, William L Francis DDS Inc | **MEMORANDUM OF DECISION RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff(s),<br>v. | |
| Nicholas Stephen Kahrilas, Laura Rae Kahrilas | Date:        January 17, 2014<br>Time:       11:00 a.m.<br>Courtroom:  302 |
| Defendant(s). | |

On or about June 2008, William Francis, DDS ("Francis") was approached by Defendant Nicholas Kahrilas ("Nicholas") at an unrelated open house in Pacific Palisades with a request to make a loan to him and his wife Laura Kahrilas ("Laura," referred to collectively as "Defendants") to complete the construction of a single-family residence at 463 Wynola St, Pacific Palisades, CA 90272 (the "Property").  <u>Complaint to Determine Dischargeability of Debt</u>

(the "Complaint"), 2:15-17. Defendants requested a loan in the sum of $315,000[1] (the "Loan" or the "Loan Proceeds"), which was funded both by Francis and Mark Daniel, DDS ("Daniel," referred to collectively with Francis as "Plaintiffs"). The loan was memorialized by a promissory note dated December 1, 2008, which was also secured by a deed of trust on the Property. Complaint, 2:18-21.

Plaintiffs assert that Nicholas "indicated affirmatively" that the proceeds of the Loan would be used to pay McCallister Construction, Inc. ("McCallister") and all other contractors (collectively referred to with McCallister as the "Contractors"), and that Laura knew of and ratified Nicholas' alleged representations. Complaint, 3:3-8. Plaintiffs allege that their decision to make the Loan was based on the alleged representation by Nicholas that the loan proceeds would be used to pay Contractors. Id. at 3:3-11; 3:15-16. It is Plaintiffs' position that Defendants did not pay the Contractors because the Defendants listed debts owed to the Contractors on their bankruptcy schedules. Id. at 3:9-11. Instead, Plaintiffs' contention is that Defendants used the $315,000 for other personal expenses.[2] Id. at 3:20-22.

Summary Judgment

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c) (incorporated by FRBP 7056).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. Id. at 324. The court must view the evidence in the light most favorable to the nonmoving party. Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1284 (9th Cir.1982). All reasonable doubt as to the existence of a genuine

---

[1] Plaintiffs allege in the Complaint that Defendants requested a loan of $315,000, but in the Opposition to the Memorandum of Points and Authorities in Support of Partial Summary Judgment, Plaintiffs allege that Nicholas initially requested a loan of $350,000, but that Francis and Daniel ultimately loaned Debtors $315,000. Opposition to the Memorandum of Points and Authorities in Support of Partial Summary Judgment, 4:5.

[2] Plaintiffs allege in the Complaint that Defendants, "used the $315,000 for other personal expenses", but in the Opposition to the Memorandum of Points and Authorities in Support of Partial Summary Judgment, Plaintiffs allege "a bulk" of the $315,000 was used for Defendants' personal expenses. Plaintiffs do not specify how much of the Loan they believe was used for personal expenses and not for payment of Contractors. Opposition to the Memorandum of Points and Authorities in Support of Partial Summary Judgment, 4:10-11.

issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir.1976). The inference drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Ins. Co. of N. Am., 638 F.2d 136, 140 (9th Cir.1981).

A "material fact" is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987). The materiality of a fact is thus determined by the substantive law governing the claim or defense. Id.

Parol evidence

Defendants argue that Plaintiffs cannot use inadmissible parol evidence to succeed on the elements of reliance, causation and damages because such evidence contradicts the promissory note and deed of trust. Defendants specifically refer to the alleged oral representation of Nicholas that the loan was the Loan proceeds were to be used for "construction purposes." See Opposition to the Memorandum of Points and Authorities in Support of Partial Summary Judgment, 5:28 – 6:1 (the "Opposition to the P&A"). Defendants argue that this alleged representation cannot be used to contradict the express terms of the promissory note, which does not contain any restrictions on the use of the Loan proceeds, and that there was no separate "construction loan" agreement. Defendants believe that the parol evidence rule bars Plaintiffs from using the alleged misrepresentation to prove fraud under 523(a)(2)(A).

Plaintiffs correctly point out that, in California, the parol evidence rule provides for certain exceptions, including establishing fraud. Cal. Civ. Proc. Code § 1856(g); see also Tenzer v. Superscope, 39 Cal.3d 18 (Cal. 1985). Here, Plaintiffs are not seeking to enforce or void the written agreement; instead, they are seeking a judgment of nondischargeability and damages for fraud in the inducement. Thus, the parol evidence rule does not apply in this case.

Indirect representations

Defendants also argue that because Nicholas never had any direct communication with Daniel, Nicholas could not have made any misrepresentation to Daniel. Opposition to the P&A,

19:10 – 21:8. Plaintiffs counter that, while Defendants are generally correct, there is an exception to where the defendant intends or has reason to expect that his comments will be passed on and will influence the conduct of others.

California follows § 533 of the Restatement Second of Torts in imposing liability upon the maker of a fraudulent misrepresentation to A who intends that A repeat it to B, where B is the actor and injured party. See Geernaert v. Mitchell, 31 Cal.App.4th 601, 605 (Cal.Ct.App.1995) (finding that a seller who misrepresented facts about home defects to buyer could be liable to subsequent buyer if he anticipated that the misrepresentations would be repeated). Similarly, California recognizes the rule of § 531 that a fraudulent representation intended to defraud any member of "the public or a particular class of persons" may give rise to liability in favor of anyone who detrimentally relies on the representation, whether it was directly communicated or not. See Bily v. Arthur Young & Co., 3 Cal.4th 370, 415 (1992) (dealing with auditor's liability to third persons who act in reliance on information in the audit report); see also Rest.2d Torts, § 531.

Francis stated that when Nicholas approached him about the Loan, he told Nicholas that he did not have sufficient funds to make the loan in the amount Nicholas requested, but that he would contact a friend (Daniel) to seek his participation in the proposed loan. Declaration of William Francis in Opposition to the P&A, 13:11-20. Nicholas, on the other hand, does not dispute that Francis stated that he'd approach another party with his loan request, and stated only that he doesn't recollect any "substantive discussions" concerning the loan terms prior to funding. Declaration of Nicholas Kahrilas, 33:5-17. Because Francis told Nicholas that to accommodate the amount of his loan request he would need to contact a friend to help him fund it, Nicholas had reason to expect that Francis would inform whomever was helping Francis fund the Loan that the proceeds would be used to complete the construction on the Property.

Furthermore, Defendants' contention that Francis and Daniel made two separate loans with different security interests is belied by the evidence they presented. There is only one note and one deed of trust. Declaration of Nicholas Kahrilas, Ex. U. While the section of the note entitled "BORROWER'S PROMISE TO PAY" does delineate the different interests that Francis and Daniel had in the note, the note names both parties as "Lender," lists the debt as "$315,000," and provides for only one monthly payment to be made on the Loan. Id. The note was secured by one deed of trust that empowered the party that held more than 50% of the beneficial interest in the note to take action on behalf of all of the beneficiaries. Id. The terms of

the note and the deed of trust disprove Defendants' assertion that there are two separate loans. The fact that Nicholas never had any direct communication with Daniel is not a bar to liability.

Nondischargeability under § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge any debt "to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The Ninth Circuit has held that a creditor's claim of nondischargeability based on § 523(a)(2)(A) must satisfy five elements: (1) the debtor made false statement or deceptive conduct; (2) the debtor knew the representation to be false; (3) the debtor made the representation with the intent to deceive the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained damage resulting from its reliance on the debtor's representation. In re Slyman, 234 F.3d 1081, 1085 (9th Cir. 2000). The provisions of the § 523(a) exceptions to discharge should be construed narrowly. See, e.g., Cal. Franchise Tax Bd. v. Jackson (In re Jackson), 184 F.3d 1046, 1051 (9th Cir.1999); Bowen v. Francks (In re Bowen), 102 B.R. 752, 756 (B.A.P. 9th Cir. 2001).

*False statement or deceptive conduct*

In the Complaint, Plaintiffs allege that Nicholas represented to Francis that he needed the loan "to pay McCallister Construction, Inc. and all other contractors." Complaint, 3:4-5. Plaintiffs also allege that Nicholas requested the loan to "complete the project (construction of the residence [on the Property])." Declaration of William Francis in Support of Opposition to the P&A, 13:7-10. Plaintiffs contend that Nicholas stated to them that the Loan proceeds would be used to pay Contractors and finish construction.

Nicholas stated in his deposition that he told Francis at the open house that the Loan was needed because "[he] was tight on cash and needed monies to complete the project." Opposition to the P&A, Ex A, 30:9-14. Daniel admitted in his deposition that Plaintiffs permitted Defendants to use $21,000 of the Loan Proceeds for "proper escrow closing costs." Declaration of Nicholas Kahrilas, Ex. A, 58:15-18. Defendants admit that a small portion of the Loan Proceeds, approximately $40,000[3], was used to pay personal expenses. Defendants' rebuttal is twofold: (1) that there were no restrictions on how the Loan Proceeds were to be used; and (2)

---

[3] See Nicholas Kahrilas' Reply in Support of Motion for Partial Summary Judgment, 2:6 ($252,000 allegedly used in completion of the residence, $20,000 for loan closing costs = $272,000; $315,000 - $272,000 = $40,000).

-5-

that the personal $40,000 was repaid by Defendants from earnings from a company Nicholas was involved with that materialized in the spring of 2009. Declaration of Nicholas Kahrilas, 33:19-21 – 34:18.

On December 3, 2008, soon after the Loan proceeds were deposited into Defendants' Bank of America account, $111,003.32 was paid to Defendants' American Express card ("AMEX") for contractor charges made by McCallister in September 2008[4]. Defendants also contend that $128,370.62 was paid for "maintenance and construction costs" on the Property from their Wells Fargo account, but a closer look at the cost itemization provided shows that only $62,671.71 was used for "construction costs" - $65,698.91 was used to make loan payments to IndyMac and to Plaintiffs on account of the Loan. Declaration of Nicholas Kahrilas, Ex. D-1. The payments made from the IndyMac account for construction costs totaled $17,791.22. Id., Ex. E. Defendants also assert that they paid $127,397.05 for "maintenance and construction costs" on the Property from their Bank of America account, but once again the cost itemization provided shows that only $103,119.50 was used for "construction costs" - $24,277.55 was used to make loan payments to IndyMac and to Plaintiffs on account of the Loan. Id., Ex. G.

Taking all of the above-enumerated charges into account, including the $21,000 for proper escrow closing costs, the evidence shows that $315,585.75 was paid for "construction costs," not including the line items for loan payments that were eliminated from the calculation. The construction costs paid by Defendants, however, did not end there.

During the period between December 2008 and April 2010, after the Loan was funded, Defendants charged $96,569 for "construction costs." These payments are separate from the payments made directly from the Wells Fargo, IndyMac and Bank of America accounts. Id., Ex. C-34; C-44. This brings the total paid after the Loan was funded to $412,154.75

Plaintiffs provide no evidence to rebut the evidence provided by Defendants that more than $315,000 actually went in to completing construction following the Loan. Even making all inferences in favor of Plaintiffs, the conclusion is inescapable that there was no misrepresentation made by Defendants to Plaintiffs. The account and payment records submitted for the period after the Loan was funded show that all of the Loan Proceeds were

---

[4] See Declaration of Nicholas Kahrilas, Ex. C-5 (McCallister charged $50,000 on September 5, 2008); Ex. C-13 (McCallister charged $125,000 on September 14, 2008), for a total of $175,000 paid to McCallister from Defendant's AMEX card in September 2008.

exhausted by the costs of the construction on the Property. Plaintiffs argue that the fact that McCallister was not paid in full demonstrates that Defendants lied about what they intended to use the Loan Proceeds for. This inference is not sufficient to overcome the accounting provided.

Plaintiffs' position is that Nicholas stated to Francis that he needed the Loan to "complete the project." Declaration of William Francis in Opposition to the P&A, 13:8-15. It is undisputed that Defendants obtained the Certificate of Occupancy (the "COO") in late December 2008. The evidence presented by Defendants shows that more than the total dollar amount of the Loan was used toward the costs of completing construction, and that the construction on the Property was ultimately completed. Plaintiffs have not presented evidence that raises a material dispute as to these facts.

At the hearing on the Motion for Summary Judgment, Plaintiffs argued that the fact that Defendants owed McCallister approximately $200,000 at the time of the foreclosure demonstrates that Defendants did not use the entire Loan Proceeds to complete the project as was represented by Nicholas. Plaintiffs also argued that Defendants were not supposed to have used the Loan Proceeds to pay previously incurred construction debts, specifically the $111,003.32 in previous construction costs that were charged to Defendants' by McCallister. This may have been what Francis took away from his conversation with Nicholas but, as stated in his own declaration, this was not the representation that Nicholas made. See Declaration of William Francis in Support of Opposition to the P&A, 13:7-10.

Plaintiffs' position is also undermined by the Note itself, which does not provide any restrictions or conditions on the use of the Loan Proceeds, nor does it require any segregation of the Loan Proceeds. Given the fungibility of money and, absent a segregation provision, the important question is whether the debtor made use of equivalent amounts of money in the required manner. See Matter of Sheridan, 57 F.3d 627, 636 (7th Cir. 1995). The breakdown of costs above shows that the value of the entire Loan Proceeds was used towards the cost of completing the project.

The moving party is entitled to summary judgment if the nonmoving party "after adequate time for discovery ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322; see also Ilko v. Cal. St. Bd. Of Equalization (In re Ilko),

651 F.3d 1049, 1052 (9th Cir.2011) (applying Celotex summary judgment standard to bankruptcy court adversary proceeding). As explained in Celotex, all other facts are immaterial when the nonmoving party fails to submit sufficient proof of an essential element of its case. Celotex Corp., at 323.

Plaintiffs were required to present evidence that Defendants did not use the Loan Proceeds to complete construction, as they represented they would. Plaintiffs presented no evidence to dispute that the equivalent value of the Loan Proceeds were used to pay to contractors and other construction costs. Instead, Plaintiffs presented argument about their subjective intent in making the Loan. It is Plaintiffs' position that, at trial, they could show the veracity of Plaintiffs' subjective intent that the Loan Proceeds be used only for *prospective* construction costs. Plaintiffs miss the point: Plaintiffs' disappointment at the frustration of their intended investment of even a breach of contract is not at issue – whether an actual misrepresentation was made is at issue.

Plaintiffs' position as to what Nicholas represented has constantly shifted. At the hearing, Plaintiffs defended their inconsistent description of Nicholas' representation by arguing that the notice pleading standard in federal court permitted them to make general allegations in the Complaint that could be refined after discovery. Federal Rule of Civil Procedure 9(b) requires a plaintiff "must state with particularity the circumstances constituting fraud," but can allege generally "[m]alice, intent, knowledge, and other conditions of a person's mind." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). The particularity requirement "has been interpreted to mean the pleader must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." In re MannKind Sec. Actions, 2011 U.S. Dist. LEXIS 145253, *19-20 (C.D. Cal. Dec. 16, 2011). Nevertheless, even if Plaintiffs did not adhere to the more strict pleading required by Rule 9(b), at the summary judgment stage, the Court is not limited to looking at the four corners of the Complaint. Evidence of an essential element is sufficient to defeat summary judgment only if a jury reasonably could infer from that evidence the existence of that element. Here, the undisputed evidence presented by both sides shows that Nicholas stated that he needed the Loan to complete construction, that the equivalent sum of the Loan Proceeds was used for that purpose, and that construction was completed.

Plaintiffs stated at the hearing that if they had known that one dollar of the Loan Proceeds was to be used for anything other than construction and contractor costs, they would

never have made the Loan to Defendants.  That may have been their subjective understanding, but the evidence shows that their subjective intent was not codified in the terms of the Loan, nor was Plaintiffs' belief supported by their own account of Nicholas' representation.  There is no genuine issue of material fact as the evidence presented by Defendants shows that, even if the alleged representation were made, more than the total dollar amount of the Loan was used toward the costs of completing construction, and that the construction on the Property was ultimately completed.

*Knowledge of falsity (or 'scienter')*

Plaintiffs allege that Defendants "knew that the representations made to Plaintiffs were false and they never intended to pay the Contractors for the sums due on the [Property]." Complaint, 3:17-19.  Assuming, *arguendo*, that (1) Defendants did state that the Loan Proceeds were going to be used to pay only Contractors; and (2) that that misrepresentation was false, Plaintiffs must show that at the time of the alleged statement, Defendants knew that the Loan Proceeds were going to be used for another purpose.

Defendants secured the Loan in December 2008 and the terms of the Note required full payment of any outstanding loan balance on or before January 1, 2010.  Complaint, Ex. A.  The evidence provided shows Defendants made all the required payments on the Loan from December 2008 to July 2009.  Declaration of Nicholas Kahrilas, Ex. A, 17:2:24.  The parties, however, did expect that the Loan would be satisfied by the proceeds of the sale of the Property.  Id., Ex. A, 26:3-18.

Plaintiffs have presented no evidence of Nicholas' knowledge of the alleged falsity of the statement, and the only evidence before the Court were the actions taken by Defendants. These actions do not demonstrate scienter.  Defendants' actions demonstrate that they attempted to abide by the terms of the Loan.  When the funds to complete the project were dissipated, Defendants attempted to sell the home for a lower price than they had anticipated, and were stymied by both the size of the encumbrances on the Property and a depressed real estate market.  See Declaration of Nicholas Kahrilas, Ex. A, 14:22-25 – 15:1-2; Ex. Y.  The payments made for construction costs subsequent to the Loan's funding show that Defendants did not request the Loan with the intent  to use the Loan for anything other than to get the construction completed, sell the property and get all parties paid, including the profit Defendants had anticipated but which did not materialize. That approximately 13% of the Loan's value was

initially used to fund other expenses does not undermine this finding, because the Loan Proceeds that were used for other expenses were offset by non-Loan funds being used towards construction expenses.

Plaintiffs point out that Nicholas admitted to having "made millions." Opposition to the P&A, 2:25-26. Defendants were in the same position as many real property investors were in 2009 – engaged in deals that were ultimately to no avail because of the economic downturn and its effect on real estate prices. The Court takes judicial notice pursuant to Federal Rule of Evidence 201[5] of the economic downturn that began in late 2008, and the effects of said downturn generally on the real estate market of southern California beginning in 2009[6]. Plaintiffs submitted no evidence that, at the time the alleged misrepresentation was made, Defendants did not intend to honor their commitments.

Assuming, for arguments sake, that Nicholas made the representation that the Loan Proceeds were to be used to pay Contractors, there is no genuine issue of material fact as to this element, and Defendants are entitled to judgment as a matter of law.

*Intent to deceive, i.e., to induce reliance*

Plaintiffs must show that at the time of the alleged statement that the Loan Proceeds were to be used to pay Contractors, Defendants intended to induce Plaintiff's reliance on the alleged misstatement. Because it is nearly impossible to prove an intent to deceive by direct evidence, "[a] court may infer fraudulent intent from various kinds of circumstantial evidence." Edelson v. Comm'r, 829 F.2d 828, 832 (9th Cir.1987); Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch), 237 B.R. 160, 167–68 (B.A.P. 9th Cir.1999). The court may look at "the totality of the circumstances and the conduct of the person accused" in order to make an inference of fraudulent intent. In re Ormsby, 591 F.3d 119, 1206 (9th Cir. 2010).

Plaintiffs allege that Defendants "intended for Plaintiffs to rely on these misrepresentations." Complaint, 3:26. Again, assuming for arguments sake that Nicholas made representations that the Loan Proceeds were to be used to pay construction costs, there is no

---

[5] Federal Rule of Evidence 201 provides that "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

[6] The S&P/Case-Shiller Index for Los Angeles shows that the real estate market hit the lowest point on or about May 2009, http://www.spindices.com/indices/real-estate/sp-case-shiller-ca-los-angeles-home-price-index (last visited January 12, 2014).

evidence that Defendants intended to deceive Plaintiffs about the reasons for securing the Loan. Nicholas admits to stating to Francis that he "was tight on cash and needed monies to complete the project." Opposition to the P&A, Ex A, 30:9-14. Defendants have presented evidence that after the Loan was funded, they continued to pay for construction costs as well as make regular payments on the Loan for eight months, more than 2/3 of the Loan's term.

Viewing Defendants actions and conduct after the Loan was made, it is undisputed that Defendants intended for Plaintiffs to rely on their representations that they intended to finish construction, sell the Property, and then pay all secured creditors from the sale proceeds. There is no genuine issue of material fact as to this element.

*Justifiable reliance*

For determining reliance, courts apply a subjective "justifiable" reliance standard, which turns on a person's knowledge under the particular circumstances. Citibank, N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1090 (9th Cir.1996). "Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." Id. (quoting Field v. Mans, 516 U.S. 59, 70 (1995) (quoting the Restatement (Second) of Torts § 545A cmt.b (1976)). "[A] person is justified in relying on a representation of fact although he might have ascertained the falsity of the representation had he made an investigation." Id. (quoting Mans, 516 U.S. at 70). However, a person cannot justifiably rely on a representation if he or she knows it is false or its falsity is obvious. Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh), 973 F.2d 1454, 1459 (9th Cir.1992) ([a] "person cannot purport to rely on preposterous representations or close his eyes to avoid discovery of the truth.").

Plaintiffs allege that their reliance on Defendants alleged representations that the Loan proceeds would be used to pay Contractors was justifiable because Defendants were next-door neighbors and long-time friends of Francis. Complaint, 4:2-5. Defendants make no argument with respect to this element. Assuming for arguments sake that Nicholas allegedly made misrepresentation that the Loan Proceeds were to be used to pay construction costs, there is no evidence that Defendants intended to deceive Plaintiffs about the reasons for securing the Loan. It was justifiable for Plaintiffs to rely on Defendants' alleged statement that the Loan Proceeds were going to pay Contractors, because Nicholas had prior dealings with Francis that had worked to their mutual benefit, and Defendants seemed to be in a relatively stable financial

position until the economic downturn began. Also, the debt was secured by a deed of trust on the Property, which gave Plaintiffs additional grounds for reliance because if Defendants did not repay the Loan as per the schedule, then they could expect to be paid when the house was sold. See Declaration of Nicholas Kahrilas, Ex. A, 25:3-24 – 26:1-21.

Plaintiffs were justified in relying on the alleged representation that the Loan Proceeds were to be used to pay Contractors. There is no genuine issue of material fact as to this element.

*Resulting damage to Plaintiffs proximately caused by their reliance on the debtor's statement or conduct*

Causation or proximate cause entails (1) causation in fact, which requires a defendant's misrepresentations to be a substantial factor in determining the course of conduct that results in loss and (2) legal causation, which requires a creditor's loss to "reasonably be expected to result from the reliance." Beneficial Cal., Inc. v. Brown (In re Brown), 217 B.R. 857, 862 (Bankr.S.D.Cal.1998) (citing Restatement (Second) of Torts, §§ 546, 548A). "A fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance." Restatement (Second) of Torts, § 548A. In other words, could Plaintiffs' damage reasonably be expected from their reliance on Defendants' alleged misrepresentation that the Loan proceeds would be used to pay Contractors and complete construction?

Plaintiffs also argue that Nicholas' alleged statement was the proximate cause of their damage, but do not provide any evidence to support this contention. It is undisputed on the evidence submitted that this alleged statement was not the proximate cause of Plaintiffs damage.

Plaintiffs contend that their damage was the result of "the fact that Kahrilas failed to pay McCallister and used the Loan Proceeds for personal use that delayed the construction." Opposition to the P&A, 11:2-3. As discussed earlier, the evidence does not support this factual assertion.

Defendants counter that the delays in construction and sale were not due to misuse of the Loan Proceeds. Defendants argue instead that the proximate cause of Plaintiffs' damage

was a combination of intransigence by Plaintiffs and McCallister regarding approval of a short-sell buyer and the biggest collapse in the economy and real estate market in recent memory. Points & Authorities in Support of Motion for Partial Summary Judgment, 21:9:20. Defendants contend that the sale was delayed because of the dispute between Plaintiffs and McCallister over whose lien should take priority over whom, and the alleged interference by Plaintiffs and McCallister with the sale of the property, specifically Plaintiffs' assertion that they had the right to approve or reject offers to purchase the Property and their position that they would reject any offers for purchase of the Property that did not provide sufficient proceeds to pay off both the Plaintiffs' and the McCallister liens. Plaintiffs dispute this factual assertion but, as it is immaterial, it is of no import.

Defendants' construction loan from IndyMac matured on December 26, 2008. Declaration of Nicholas Kahrilas, Ex. M-2. Defendants provide evidence of their attempts to sell the residence in 2009, including a cancelled contract of sale dated September 2009 and emails from their real estate broker about other cancelled sales. Id., Ex. Y. Defendants also provided a string of email conversations with a realtor about the frustrated attempts to sell the Property. Id. Regardless of why, there is no dispute that Defendants were unable to complete a sale of the Property before IndyMac foreclosed. It was the foreclosure of the Property by IndyMac , which extinguished Plaintiffs' junior lien, that was the proximate cause of Plaintiffs damage. Any representation about the use of the Loan Proceeds, false or not, was not shown to have caused the foreclosure.

Plaintiffs argued at the hearing on the Motion that there was approximately $200,000 left owing to McCallister at the time the Property was sold at foreclosure. By this point, the Loan Proceeds, or their equivalent value, were exhausted after having been used to pay construction costs. Had Defendants come up with the $200,000 to pay McCallister, Plaintiffs contend that the Property would have sold and the debt to them would have been satisfied. Plaintiffs seem to be arguing that it was Defendants' inability to come up with another $200,000 that resulted in the foreclosure sale. Taking Plaintiffs' assertion as true and credible, it was Defendants' inability to procure more money to satisfy the claims of McCallister and other contractors that resulted in foreclosure.

Based on the evidence presented, the Court finds that the proximate cause of Plaintiffs' loss was not the alleged misrepresentation, or any reliance thereon, but instead it was the foreclosure of the Property by IndyMac that extinguished Plaintiffs' junior lien.

Conclusion

    Viewing the facts and the inferences to be drawn therefrom in a light most favorable to Plaintiffs, the Court cannot find that the record taken as a whole demonstrates a genuine issue of material fact for trial. Plaintiffs cannot establish at least four of the essential elements of a § 523(a)(2)(A) claim, *i.e.,* that (1) Defendants made a representation which they knew was false at the time it was made; (2) Defendants made the false representation with the intention and purpose of deceiving Plaintiffs, (3) that Defendants made the representation with the intent and purpose of deceiving Plaintiffs, and (4) that Defendant's representation was the proximate cause of Plaintiffs' damage. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' § 523(a)(2) claim as a matter of law.

Motion GRANTED.  Movants shall submit order in accordance with this ruling within seven days.

###

Date: January 27, 2014

Maureen A. Tighe
United States Bankruptcy Judge

-14-