**FILED & ENTERED**

**FEB 27 2014**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re: | CHAPTER 7 |
| Nicholas Stephen Kahrilas<br>Laura Rae Kahrilas | Case No.:  1:11-bk-13182-MT<br>Adv No:    1:11-ap-01409-MT |
| Debtor(s). | |
| Profit Sharing Plan by William L Francis and Mark A & Cathy A Daniel Declaration of Trust Etc, William L Francis DDS Inc | **MEMORANDUM OF DECISION GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Plaintiff(s),<br>v. | |
| Nicholas Stephen Kahrilas, Laura Rae Kahrilas | Date:       February 4, 2014<br>Time:       10:00 a.m.<br>Courtroom: 302 |
| Defendant(s). | |

On or about September 18, 2006, Nicholas and Laura Kahrilas (referred to individually as "Nicholas" and "Laura," and collectively as "Defendants") entered into a contract (the "Construction Contract") with Stuart McCallister of McCallister Construction, Inc. (referred to collectively as "Plaintiff") for construction services to be rendered in connection with construction of a house and landscaping (the "Project") on real property located at 463 Wynola Street, Pacific Palisades, 90272 (the "Property").  <u>First Amended Complaint to Determine Dischargeability of</u>

-1-

Debt (the "Complaint"), 3:2-14.  Under the Contract, Plaintiff was obligated to furnish all necessary labor, services, materials and equipment to be used or consumed in the Project.  Id. at 3:15-16.  Plaintiff was to have received the cost of the work (time plus materials) plus 15% of the cost of the work as a contractor's fee.  Id. at 3:16-18.  The Construction Contract called for progress payments on account of the amount due on a biweekly basis.  Id., Ex. A, Bates stamp no. 24.

Sometime in February 2007, Plaintiff alleges that he learned that Defendants had taken a construction loan from IndyMac Bank (the "IndyMac Loan").  Complaint, 3:27-28; Ex. A.  Plaintiff included in Exhibit A to the Complaint a Draw Request that purportedly bears the signature of Plaintiff's principal Stuart McCallister and Will Shepphird as "architect."  Id., Ex. A, Bates stamp no. 93.  Plaintiff contends that the two signatures on the Draw Request are not authentic.  Id. at 4:4-5.

In October 2008, Plaintiff contends that he grew concerned about the "increasing amounts" that were owed by Defendants under the Construction Contract.  Complaint, 4:13-15.  Plaintiff then telephoned Nicholas to discuss payment of the past due invoices and the status of the Project.  Id. at 4:16-19; Defendants' Answer to the Complaint (the "Answer"), 4:24-26.  Plaintiff alleges that he told Nicholas that he could not continue to work on the Project until he was paid on the past due invoices.  Complaint, 4:19-20.

Per Defendant's request, Plaintiff and Nicholas met at Defendants' cabana at the Bel Air Bay Club in November 2008.  Complaint, at 4:20-24; Answer, 5:1-2.  Nicholas explained that his insurance business had suffered tremendously and was short of personal funds.  Complaint, at 4:24-26; Answer, 5:1-2.  Plaintiff alleges that Nicholas told him that the last 10% of the IndyMac Loan (approximately $300,000, the "Retention Funds") was going to be released to Defendants when a Certificate of Occupancy ("C.O.") was obtained.  Complaint, 5:1-3.  If the C.O. was not obtained by Christmas 2008, Plaintiff alleges that Nicholas represented that he would be "hit with larger fees by IndyMac" for having to extend the IndyMac Loan.  Id. at 5:7-8.  Plaintiff alleges that Nicholas guaranteed him, promised him, shook his hand and said that he gave Plaintiff his word that Plaintiff would receive payment directly from the Retention Funds, for the entire $300,000, and that Plaintiff would be the first to be paid.  Id. at 5:9-11.

Plaintiff alleges that Nicholas stated that he had no other money available at the time to pay him, and that the only option was to get the C.O. so that IndyMac would release the

Retention Funds. Id. at 5:12-13. Plaintiff alleges that Nicholas encouraged him to call Mr. Paul Hoffman ("Hoffman") at IndyMac to confirm the amount and terms of the Retention Funds, and mentioned that Nicholas and Hoffman were "good buddies and had been fraternity brothers together." Id. at 5:14-17. Plaintiff alleges that he did call Hoffman and learned that IndyMac's practice was to pay the loan balance from the IndyMac Loan upon final inspection of the Project. Id. at 5:18-19.

Sometime around November 13, 2008, Defendants executed a "Notice of Completion" form provided by IndyMac, wherein they stated that the Project was completed on November 13, 2008. Complaint, 6:16-19, Ex. G; Answer, 6:16-18. Concurrently, Defendants executed a "Final Draw Request," wherein Defendants requested that all of the remaining funds under the IndyMac Loan be paid to them. Complaint, 6:26 – 7:3, Ex. H; Answer, 6:21-23.

On December 12, 2008, Plaintiff sent Nicholas an email stating that he "could go no further until I receive money." Complaint, Ex. C. Nicholas sent Plaintiff an email in response, stating that Hoffman had "made it crystal clear to me that no more monies will be released until we have [the C.O.] and while you have him on the phone ask him about the penalties I am incurring for the project not being done by September before there were any more delay issues." Id. at 5:20-24; Ex. C. Plaintiff alleges that, in reliance on Nicholas' representation that Plaintiff would be paid from the Retention Funds, Plaintiff claims that he "recommenced" work on the Project. Id. at 5:11-13. Plaintiff points out that Defendants obtained a temporary C.O. by Christmas 2008. Id. Plaintiff does not specify, however, what date he stopped working on the Project, nor what date he "recommenced" working on the Project.

Shortly after the C.O. was obtained, Plaintiff alleges that he contacted Nicholas to inquire as to when payment would be sent for outstanding invoices; to which Nicholas allegedly replied that Plaintiff would not be paid. Complaint, 7:4-6.

On or about January 2, 2009, Defendants received from IndyMac the final Loan draw, in the amount of $77,944.43 and that, prior to such disbursement, Defendants had last received a draw from IndyMac on or about September 17, 2008. Complaint, 7:19-21; Answer, 7:14-17. Plaintiff states that, contrary to Nicholas' alleged representation, the IndyMac Loan did not have a retention amount of $300,000. Complaint, 7:21-24. Plaintiff alleges that he did not receive any of the $77,944.43 that was disbursed. Id., 7:24-26.

On January 4, 2009, Nicholas sent an email to Plaintiff stating that Defendants intended to sell the Property, and directed Plaintiff to suspend all work on the Project "in the interim." Id. at 7:7-8; Ex. I. Plaintiff alleges that this was the first time he'd been apprised of Defendants' intention to sell the Property, rather than reside in home after the Project was completed. Id. at 7:10-11.

After having not received the allegedly expected $300,000 from the IndyMac Loan disbursement, Plaintiffs filed suit in Los Angeles Superior Court (the "State Court") on July 29, 2009, asserting claims for breach of contract, and to foreclose a mechanic's lien (the "State Court Complaint"). Plaintiff's Request for Judicial Notice in Support of Opposition to Motion for Summary Judgment ("RJN"), Ex. 1. On January 25, 2010, Plaintiff received a default judgment against Defendants in the amount of $268,663.57 (the "State Court Judgment"). Id., Ex. 2.

On March 15, 2011, Defendants filed a voluntary chapter 7 petition. On December 13, 2011, Plaintiffs filed an adversary complaint against Defendants to determine dischargeability of debt. On March 6, 2012, Plaintiff filed an amended complaint under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6), and 11 U.S.C. § 727(a)(2)(A) and 727 (a)(4)(A).

On September 26, 2013, Defendants filed a Motion for Partial Summary Judgment (the "MSJ"), seeking a determination on the that there are no genuine issues of material fact as to the claims under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6).

Res Judicata and Collateral Estoppel

Plaintiff argues in opposition to the MSJ that his State Court judgment precludes Defendants from challenging the amount of the debt. Because nondischargeability of a debt is an entirely separate determination with its own elements under § 523 which require more than the establishment of liability, principles of res judicata do not apply (i.e. no determination of nondischargeability was made). Defendants correctly argue that the State Court Complaint did not contain a cause for action for fraud, nor did the State Court Complaint allege any facts related to fraud. It follows then that as to the State Court Judgment, res judicata cannot apply. Collateral estoppel, on the other hand, would apply to individual fact determinations made by the state court that were actually litigated. See Brown v. Felsen, 442 U.S. 127 (1979).

Collateral estoppel principles apply in discharge exception proceedings under §523(a). Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991). Pursuant to 28 U.S.C. §1738, as a matter of full faith and credit, federal courts are required to apply the pertinent state's collateral estoppel principles. Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995). Under California law, collateral estoppel applies only if (1) the issue sought to be precluded from relitigation is identical to that decided in the former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding was final and on the merits; and (5) the party against whom preclusion is sought is the same, or in privity with, the party to the former proceeding. Harmon v. Kobrin, (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001).

Lastly, in the Ninth Circuit, the Court must also find that giving the previous judgment preclusive effect would further the public policies underlying the collateral estoppel doctrine. The California Supreme Court has identified three policies underlying the doctrine of collateral estoppel: "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." Baldwin v. Kilpatrick (In re Baldwin), 249 F.3d 912, 919-920 (9th Cir. 2001).

Plaintiff cites In re Comer, 27 B.R. 1018 (B.A.P. 9th Cir. 1983), *aff'd*, 723 F.2d 737 (9th Cir. 1984) to support his position that a state court judgment should be accorded preclusive effect as to the amount of the judgment. Reliance on In re Comer, however, is inapposite. The focus of the B.A.P.'s analysis in In re Comer was on § 523(a)(5), which excepts from discharge any debt for a domestic support obligation. The state court judgment given preclusive effect in Comer was a default judgment based on a breach of an agreement for alimony and child support, which fits squarely within the exception to discharge under § 523(a)(5). Plaintiff's State Court Judgment, on the other hand, is not for fraud; instead the State Court Judgment is for breach of contract.

Plaintiff's reliance on Berr v. FDIC (In re Berr), 172 B.R. 299 (B.A.P. 9th Cir. 1994) is also misplaced, as Berr is also factually distinguishable. In Berr, the state court judgment at issue was for both breach of contract and fraud, and the B.A.P. found that the complaint to determine dischargeability of debt under § 523(a)(2)(A) was based on similar causes of action as were asserted in the state court, namely fraud. Id. at 306. The B.A.P. held that when the issues before the bankruptcy court do not differ from the issues which were before the prior adjudicating court, the "identity of issues" prong is satisfied. Id.

The State Court Judgment cannot be given preclusive effect as to the issues raised by the first four elements of the causes of action asserted in the Complaint. Here, State Court Complaint did not contain a cause for action for fraud, nor did the State Court Complaint allege any facts related to fraud. There is no identity of issues as between the State Court Judgment and the allegations of fraud in the Complaint.

As to damages, however, Defendants are also correct that the amount of damages for breach of contract is not preclusive as to the amount of damages, if any, which were proximately caused by the alleged fraud. There was no delineation in the damage award between damages for breach of contract and damages for the alleged fraud because the State Court did not even consider any factual allegations of fraud. The State Court Judgment does not bar Defendants from challenging the amount of the State Court Judgment that Plaintiff asserts was the result of fraud.

The State Court Judgment, however, will preclude Defendants from making any argument as to the amount owed to Plaintiff under the Construction Contract for breach of contract and the terms of the Construction Contract. Those issues related to the amount Defendants owe Plaintiff for breach of contract and the terms of the Construction Contract were identical to that which was decided by the State Court. With regard to the second requirement, it is settled under California law that a default judgment fulfills the criterion requiring that the issues be actually litigated in the earlier proceeding:

> [A default judgment is] conclusive to the issues tendered by the complaint as if it had been rendered after answer filed and trial had on the allegations denied by the answer.... Such a judgment is res judicata as to all issues aptly pleaded in the complaint and defendant is estopped from denying in a subsequent action any allegations contained in the former complaint.

Younie v. Gonya (In re Younie), 211 B.R. 367, 375 (B.A.P. 9th Cir. 1997) (citing In re Moore, 186 B.R. 962, 971 (Bankr.N.D.Cal.1995) (quoting Fitzgerald v. Herzer, 78 Cal.App.2d 127, 129 (1947))).

Thus, in California, a default judgment satisfies the "actually litigated" requirement for the application of collateral estoppel. In re Younie, 211 B.R. at 375 (citing Lake v. Capps (In re

Lake), 202 B.R. 751, 757 & n. 6 (B.A.P. 9th Cir. 1996); Green v. Kennedy (In re Green), 198 B.R. 564, 566 (B.A.P. 9th Cir.1996)). The third criterion is also met, as the issues of the terms of the contract and the breach thereunder was necessarily decided according to the allegations of the State Court Complaint.

As to the fourth requirement, a default judgment is "final" at the conclusion of the sixty-day appeal period. McKee v. Nat'l Union Fire Ins. Co., 15 Cal.App.4th 282, 289 (1993) ("A judgment is not 'final' for res judicata purposes until the appeal is concluded or the time within which to appeal has passed"); Cal. Rules of Ct., Rule 8.104.

Lastly, the parties in the State Court Complaint and Complaint are the same for purposes of the fifth requirement. The Court finds that giving the State Court Judgment preclusive effect as to the amount owed to Plaintiff under the Construction Contract for breach of contract, and the terms of the Construction Contract, furthers the public policies underlying the collateral estoppel doctrine. Thus, Defendants' argument is precluded that Plaintiff was owed no further payment for the Project.

Summary Judgment

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c) (incorporated by FRBP 7056).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. Id. at 324. The court must view the evidence in the light most favorable to the nonmoving party. Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1284 (9th Cir.1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir.1976). The inference drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Ins. Co. of N. Am., 638 F.2d 136, 140 (9th Cir.1981).

A "material fact" is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987). The materiality of a fact is thus determined by the substantive law governing the claim or defense. Id.

Nondischargeability under § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge any debt "to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The Ninth Circuit has held that a creditor's claim of nondischargeability based on § 523(a)(2)(A) must satisfy five elements: (1) the debtor made false statement or deceptive conduct; (2) the debtor knew the representation to be false; (3) the debtor made the representation with the intent to deceive the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained damage resulting from its reliance on the debtor's representation. In re Slyman, 234 F.3d 1081, 1085 (9th Cir. 2000). The provisions of the § 523(a) exceptions to discharge should be construed narrowly. See, e.g., Cal. Franchise Tax Bd. v. Jackson (In re Jackson), 184 F.3d 1046, 1051 (9th Cir.1999); Bowen v. Francks (In re Bowen), 102 B.R. 752, 756 (B.A.P. 9th Cir. 2001).

*False statement or deceptive conduct*

Plaintiff alleges that in November 2008, Nicholas represented to Plaintiff that Defendants could not pay Plaintiff the amounts owed under the Construction Contract. Plaintiffs alleges that Nicholas' false statements were that (1) upon receiving the C.O., IndyMac would release the Retention Funds of approximately $200,000 to Plaintiff; and (2) if Plaintiff continued to do work on the Project, and a C.O. was obtained by Christmas 2008, the Defendants would pay Plaintiff directly from the Retention Funds.

Nicholas admitted that, as of November 2008, he believed that the amount of the remaining loan proceeds yet to be disbursed on account of the IndyMac Loan was approximately $200,000. Declaration of Nicholas Kahrilas in Support of MSJ ("Nicholas Declaration", 25:8-10. Nicholas then stated that he learned in late December 2008 or early January 2009 that the remaining loan proceeds were only $77,944.43. Id. at 25:12-13.

Nicholas also states that it was his intention to use at least $200,000 to complete construction on or after October 2008. Id. at 9-11.

A statement can be materially false if it includes information which is "substantially inaccurate" and is of the type that would affect the creditor's decision making process. In re Greene, 96 B.R. 279, 283 (9th Cir. BAP 1989). It is undisputed that, as evidenced by Defendants' own admissions, he provided Plaintiff with false information as to the amount left to be disbursed. This misstatement was material, as the amount of the Retention Funds would have been the type of information that would have induced Plaintiff to continue to work on the Project, rather than declare a breach.

Plaintiff also alleges that Nicholas stated that he would pay all amounts due and outstanding to Plaintiff from the proceeds received from the Retention Funds. Nicholas disputes that he told Plaintiff that he would be paid directly from the Retention Funds for the entire amount owed. Nicholas stated that "I never would have and I did not promise solely to McCallister the entire $200,000 (that I thought would be received once the [C.O.] was issued)." Nicholas Kahrilas' Supplemental Declaration in Support of MSJ (Nicholas Supp. Declaration), 8:16-18. Nicholas stated that it was his intention to use "at least $200,000 to complete construction," but Defendants did not clarify whether Nicholas ever relayed this intention to Plaintiff. Whether Defendant ever made this representation is disputed, and it is material because if Nicholas did say that Plaintiff would be paid directly from the Retention Funds for the entire amount owed, this would have been the type of information that would have affected Plaintiff's decision to not declare breach of contract for non-payment.

There is a genuine issue of material fact as to whether Nicholas made the representation alleged. On a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. With such ambiguities in the factual record, summary judgment is inappropriate.

*Knowledge of falsity (or 'scienter')*

As stated above, it is undisputed that, as evidenced by Defendants' own admissions, Nicholas provided Plaintiff with false information as to the amount left to be disbursed. Defendant asserts that as of October 2008, he believed that the Retention Funds totaled approximately $200,000, and that he had no recollection of being advised until early January

2009 that the Retention Funds were only "$70,000." Nicholas Declaration, 14:7-9; 25:12-13. Nicholas attempted to explain his alleged misunderstanding of the Retention Funds amount in footnote 48 of his Declaration, wherein he states that there were approximately $200,000 of items that had not been allocated for payment, and it was his inclusion of these items in his mental calculation of the Retention Funds that led to his misunderstanding. Id. at 14, fn. 48.

Plaintiff counters that Nicholas' explanations are contradicted by the IndyMac Draw History, which Plaintiff alleges shows that not one of the line items listed by Nicholas had an available allocation. Declaration of Stuart McCallister in Opposition to MSJ, 8:14-20; Ex. 14. Plaintiff contends that the IndyMac Loan history shows that $93,781.73 was the available balance as of September 16, 2008. Plaintiff argues that this shows that when Nicholas made the statement that there were $200,000 in Retention Funds left to be disbursed, he knew the statement was false.

The Court can draw competing inferences from the evidence -- either that Nicholas' misstatement as to the amount of the Retention Funds was made from an honest miscalculation and relayed in an off-the-cuff manner without checking, or that Nicholas deliberately misstated the amount of the Retention Funds to assuage Plaintiff's concerns and prevent him from declaring a breach. Where different inferences may be drawn, summary judgment is inappropriate. Sankovich v. Ins. Co. of N. Am., 638 F.2d 136, 140 (9th Cir.1981).

Plaintiff requests that the Court consider allegedly questionable statements and the conduct of Defendants in their bankruptcy case as a whole to assess the credibility of Defendants' declarations and factual assertions. Such determinations are best left for trial, where the Court can more readily assess credibility. Knowledge of the defendant is generally better inferred based on live testimony.

*Justifiable reliance & resulting damage to Plaintiffs proximately caused by their reliance*

Defendants contend that Plaintiff had a pre-existing duty to perform on the Construction Contract, and thus Defendant could not have "obtained" services on account of his alleged misstatement prior to November 2008. Defendants argue that the alleged statement that Plaintiff would receive the entire amount of the Retention Funds on account of the past due invoices defeats Plaintiff's claim.

-10-

For determining reliance, courts apply a subjective "justifiable" reliance standard, which turns on a person's knowledge under the particular circumstances. Citibank, N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1090 (9th Cir.1996). "Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." Id. (quoting Field v. Mans, 516 U.S. 59, 70 (1995) (quoting the Restatement (Second) of Torts § 545A cmt.b (1976)). "[A] person is justified in relying on a representation of fact although he might have ascertained the falsity of the representation had he made an investigation." Id. (quoting Mans, 516 U.S. at 70). However, a person cannot justifiably rely on a representation if he or she knows it is false or its falsity is obvious. Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh), 973 F.2d 1454, 1459 (9th Cir.1992) ([a] "person cannot purport to rely on preposterous representations or close his eyes to avoid discovery of the truth.").

Plaintiff argues that he had known Defendants for more than 25 years, and that he knew Laura's entire family. Both Plaintiff and Defendants were members of the Bel Air Bay Club, and attended the same church. Furthermore, Defendants did not begin to carry a past due balance on the Construction Contract until October 2008. Based on the record, it was justifiable for Plaintiff to rely on Nicholas' alleged statement that he would be paid from the Retention Fund if he continued to work on the Project so that the C.O. could be obtained before Christmas 2008.

Plaintiff agrees that he was owed approximately $212,000 when the alleged statements were made in November 2008. Any work done by Plaintiff before November 2008, and any amount owed thereon, could not have been incurred in reliance on any alleged false representation made by Nicholas in November 2008. It is temporally impossible. Thus, it appears that the amounts due before the alleged statements at the Bel Air Bay Club are simply breach of contract damages and not cognizable under § 523(a)(2) because of the missing element of proximate causation.

Plaintiff also has not provided any evidence to show that any portion of the $212,000 that was owed for past services as of November 2008 was proximately caused by Nicholas' alleged misstatements. The parties dispute the amount that is attributable to Plaintiff's earlier breach of contract claim and not the alleged fraud. Defendants argue that they are entitled to judgment in their favor for amounts that were due to Plaintiff before the alleged false statements were made in November 2008, which Defendants argue is approximately $88,000. Plaintiff contends that the payments made after November 2008 were properly credited to earlier

amounts due, so the full amount due after that date would still be damages arising from the fraud.

Defendants do not make an argument about reliance for work done after November 2008 but do argue certain amounts were paid after that date that should be credited. It is unclear what is to be credited to earlier work and what is later work. Additional proof and evidence as to what the total non-dischargeable damages are may be presented at trial. Solely the attorney fees and interest attributable to such amount would also be at issue, so the parties should be prepared to distinguish between these two time periods. The arguments as to what amounts were paid and attributable to which time period are too conflicted, unsupported by evidence, and unclear to reach a determination at this stage.

Nondischargeability under § 523(a)(6)

Section 523(a)(6) excepts from discharge any debt of the debtor "for willful or malicious injury to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Under § 523(a)(6), Debtors' actions would need to equate with "willful and malicious" injury within the meaning of the Code. The first step of this inquiry is whether there is "willful" injury, which must entail a deliberate or intentional injury. Kawaauhau v. Geiger, 523 U.S. 57, 61-62 (1998). In the Ninth Circuit, the intent required to be considered "willful" is either the subjective intent of the actor to cause harm or the subjective knowledge of the actor that harm is substantially certain to occur. Carrillo v. Su (In re Su), 290 F.3d 1140, 1144-45 (9th Cir. 2002).

The second step of the inquiry is whether Debtors' conduct was "malicious." The relevant test for such "malicious" conduct is: 1) a wrongful act; 2) done intentionally; 3) which necessarily causes injury; and 4) without just cause and excuse. Jett v. Sicroff (In re Sicroff), 401 F.3d 1101, 1105-1106 (9th Cir. 2005).

The statutory scheme set out in § 523(a) indicates that nondischargeability claims alleging fraud should be brought under § 523(a)(2)(A). See McCrary v. Barrack (In re Barrack), 201B.R. 985, 990-91 (Bankr.S.D.Cal.1996) (finding that the more specific statute, § 523(a)(2)(A), controls fraud nondischargeability rather than the more general statute, § 523(a)(6)), *reversed on other grounds*, 217 B.R. 598 (B.A.P. 9th Cir. 1998). Indeed, section 523(a)(2)(A) expressly applies to debts "for money" obtained by "actual fraud." 11 U.S.C. § 523(a)(2)(A).

The Supreme Court, however, has suggested that nondischargeability claims based on fraud fall within the ambit of § 523(a)(6) only if: (1) the debtor fraudulently obtained something other than money, property, or services; or (2) the fraud claim involved punitive damages. Grogan v. Garner, 498 U.S. 279, 282 n. 2 (1991). The Supreme Court has since clarified that all damages (both actual and punitive) resulting from a debtor's fraud are nondischargeable under § 523(a)(2)(A). See Cohen v. De La Cruz, 523 U.S. 213 (1998).

Here, Plaintiff alleges the exact same set of facts give rise to a nondischargeability claim under § 523(a)(6). Plaintiff has not alleged anything more that would bring this set of facts within the ambit of § 523(a)(6). Defendants are entitled to judgment on the § 523(a)(6) claim.

**Conclusion**

Viewing the facts and the inferences to be drawn therefrom in a light most favorable to Plaintiff, there are genuine issues of material fact as to four issues of the § 523(a)(2)(A) claim, specifically (1) whether Nicholas made a false statement; (2) whether Nicholas knew the representation was false at the time it was made; (3) whether Plaintiff's damages were proximately caused by the alleged fraudulent statement; and (4) the amount of the damages, if any, that were proximately caused by the alleged fraudulent statement.

Lastly, Defendants demonstrated that no genuine issues of material fact were presented as to Plaintiff's claim under § 523(a)(6). Even assuming all is as Plaintiff alleges, there is no evidence to support a willful or malicious injury on Plaintiff.

The motion for summary judgment is DENIED as to the claim under § 523(a)(2). Summary judgment is GRANTED as to as to the claim under § 523(a)(6). Defendants to lodge order on the Motion for Partial Summary Judgment within 7 days.

//
//
//
//
//
//
//

While the entire McAllister debt is still at issue as part of the § 727 causes of action, those causes of action were not at issue in this motion. There appears to be approximately $2.1 million in unsecured debt at issue as a consequence of the §727 causes of action. As the denial of a discharge on all debts would obviate the need for a trial on the §523 cause of action, and that evidence would be distinct and separate, the parties should plan for a trial on the §727 action first, followed by a §523 trial if needed. Dates to be selected at the next hearing.

###

Date: February 27, 2014

*Maureen A. Tighe*
Maureen A. Tighe
United States Bankruptcy Judge